May it please the Court, my name is Jacob Hafner and I represent Dr. James Tate. I'd like to reserve five minutes for rebuttal argument. You'll have to keep an eye on the clock yourself. Absolutely. The granting of immunity to appellees has eviscerated not only Dr. Tate's constitutional rights, but all physicians' constitutional rights when it comes to their medical license. That, however, I do not believe was ever the intention of immunity. Immunity was never meant to preclude one from being afforded his or her rights, but rather courts have extended the concept of immunity to administrative boards, such as the boards of medical examiners, under the belief, if not hope, that sufficient safeguards exist to ensure that one would be afforded his or her constitutional rights without the need for recourse through the courts. Before we get to immunity, would you address why, in your opinion, you think that this case is not properly dismissed under the younger abstention doctrine? Thank you. I think that there are several reasons, Your Honor. First of all, my best one is that there's relief that's sought that cannot be obtained through the State courts. For example, we're seeking injunctive relief preventing the submission of a report to the National Practitioner Data Bank. The National Practitioner Data Bank is administered under Federal law through the Healthcare Quality Improvement Act, and there's been significant concern as to whether or not States can prohibit an entity from reporting to that data bank because it's required under Federal law. Is there any indication whatsoever, sir, that the Nevada State Board will report to the National Data Bank if it is determined under State law that Dr. Tate should not be disciplined? Is there any threat that they're going to do that? Can they – do you think that they're really going to dismiss the disciplinary ruling as to Judge Dr. Tate and then report what, that he should have been disciplined when they didn't? No, I appreciate your question. The fact of the matter is, is once they take their action, they report within 30 days of the order, and that's while the underlying judicial review is proceeding. So they will report, they wanted to report, they were going to report. The reporting is not a speculative occurrence to occur if or when, depending on the outcome of the judicial review. But nothing stops them from unreporting, does it? Well, the problem is, is there's no mechanism for completely erasing a data bank report. Well, maybe not. You never can – you can't really erase anything in this world. Nothing in the world can erase everything. But the fact is, there's nothing that stops them from telling them that this matter is not finished yet because it's being reviewed by the Nevada State Courts, and there's nothing that I can see in the law that stops them from saying, in addition, if it is set aside, this has been set aside. We're wrong. The Nevada State Courts tell us we're wrong. So nothing in the world that stops that, is there? Except that's not their practice. Their practice is to report it, and then you have to go through the judicial review process, which in this case is still going on. Mr. Hafter, can you point to the record where their practice is shown? I don't believe that that was the case. And please don't argue what their practice is if you haven't included that in the record. Go ahead. Well, in any event, one could say, well, if somebody is prosecuted in Nevada for a crime and goes to jail while proceedings are going through the courts, there it is on his record. He's actually in jail, et cetera. I mean, that is one of the misfortunes of life in the real world.  But even if the State doesn't take place at all, it doesn't take place in one instant. But how that makes a Federal constitutional problem or a violation of Federal law or somehow the State can't go forward with its procedures because we're going to enjoin them is a little bit hard to get one's mind around. Well, and I never asked that we enjoin the procedures from proceeding. We just asked for the injunction on the databank report. The other reason why we believe that the Younger Obstetrics and Gynecology Department did that was because they were not going to take place at all. Well, I don't know what you asked us for, but we enjoined the whole thing temporarily. Your Honor, respectfully, you didn't. I don't believe that. It was just the databank report. It's still continuing. We've fully breathed the procedure. I don't mean the procedure. We enjoined them taking action against him, period. In other words, if they thought it was a problem, if they thought he was a problem – I'm not going there that he is or not – if they thought he was a problem, we've stopped them from taking action to correct that problem, and we've stopped them for as long as our proceeding goes on here. That could go on for a long time. And we've just shut down the State disciplinary procedure as it applies to this person for some time. So to say that we're only doing A and not B is not quite right, is it? Well, the judiciary review is still proceeding. It's fully briefed. It's before the State judge. We haven't stopped with that. I didn't say we stopped their proceedings. I said we've stopped their carrying out their action. Well, period, right? We have in that respect. The other thing that we're at, the other reason why Younger doesn't apply in our opinion, is because we're asking for relief by this Court that we can't obtain in the State court. The relief that the State court can provide is very narrowly provided under the Nevada Administrative Procedures Act, NRS 233b. One of the questions that we're asking is whether or not the statute which Dr. Tate is being disciplined on in this case is constitutionally valid. We believe that it's vague. But can't the Nevada State court rule on that? The State court can determine whether something is constitutionally valid? They could, but it would be a separate – it would have to be a separate proceeding. That's not within the powers of the review of court on a judicial review. Well, the Court hasn't said it won't, as far as I can tell. The Nevada Supreme Court, in fact, it's implied that it will, it seems to me, decide the constitutional question. Then we're at a loss because it's amazing to us how physicians can go and have complete violations of their due process rights when – and they'll have to suffer the expense and time for that and hope that the Nevada courts are going to get it wrong after appeal, after appeal, after years later. Counsel, if I could ask you a question, please. If we abstain under Younger, does that leave you where once the State court proceedings are done, if you don't like what they've done, you can reassert your Federal court claims? As long as the abstention, I presume, is done without prejudice, the dismissal is without prejudice, but, I mean, I would have a feeling that that makes sense. But isn't that the normal nature of a Younger abstention? It may. I would have some concerns, though, that what would happen in that case is that the Federal courts would become an appellate court for the State. And I have some concerns about that. But I also have some concerns that you've got physicians who are harmed. I mean, once the databank report comes out, they have to go in and report it to every other State where they're licensed. And often, States will discipline a physician just because they've been disciplined somewhere else, regardless if there's underlying State review that's still occurring. You know, we had a case where we were concerned about, and some other courts were, too, concerned about Federal courts reviewing State actions, especially the ones that came out of the administrative area, and suggesting there really shouldn't be Federal jurisdiction. I believe the Supreme Court told us we were quite wrong about that. There is Federal jurisdiction, and we can go forward, even though it looks like we're reviewing the State. By the way, you have about 45 seconds left. I guess I'll reserve. Thank you. Good morning. My name is Frank Gilmore, and I represent Nevada State Board of Medical Examiners. Counsel, Judge Gould, if I could just ask you a question right at the outset. If we abstain on it, if we think the case suitable for younger abstention, is it mandatory that we abstain, or is it discretionary? I believe the case law is pretty clear, Judge Gould, that abstention is a discretionary function of the Federal court, and I believe also it would be, without prejudice, such that, although unfortunate for the Board, it appears to me that if Dr. Tate were displeased with the result in the State court, he would then obviously have the right to appeal to the Nevada Supreme Court. And I suppose whatever action he wanted to take, if he were displeased with the results from the Nevada Supreme Court, he could then make, as they say, his Federal case here. That's the way I understand it, Judge Gould. Okay, thank you. Your Honors, may it please the Court? He could also appeal directly to the Supreme Court, couldn't he? I suppose his availability for appeal to the Supreme Court? Not appeal. He could ask for cert. Correct. That would be available upon any decision made in this case as well, I suppose. Sure. Your Honors, very briefly, what can I say that has not already been said in Buckwalter? The conclusory paragraph in Buckwalter says essentially everything that need be said here. Tate maintains that the Board erred by applying the incorrect statute, and he maintains that the Board further erred by applying an unconstitutional statute. As Buckwalter says, well, perhaps so. But, to quote Buckwalter, the proper forum to pursue those allegations is in the adversarial proceeding. The State court petition, which, as Your Honors might not be aware, has actually been submitted for decision in the State court of Nevada in front of Judge Kosach. At the trial level, right? That's correct. And the petition for judicial review, it should not surprise the Court that the petition for judicial review tracks almost verbatim, in very similar instances, the opening brief of the appellant in this case. The three issues that the appellant challenges in the State court, that the Board applied the incorrect statute, which gave rise to the due process claim, that the Board applied an unconstitutional statute, and that the Board abused their discretion in disciplining Dr. Tate, those three issues are the three primary issues that are before Judge Kosach in the State court on judicial review. The argument you just heard that younger abstention is not appropriate because there are issues raised in this court that are not also being adjudicated or being raised in the State court, that's absolutely incorrect. The three primary issues that were raised in this opening brief are the three primary issues that are submitted before Judge Kosach. And I submit to you, Your Honors, it is very likely, if not very possible, that a decision will be reached in front of Judge Kosach before a decision is reached here. It's also very possible that that decision, which Dr. Tate will then be able to appeal to the Nevada Supreme Court under the Administrative Procedures Act, will be heard or will be lodged with the Nevada Supreme Court before a decision is reached here. So the idea that abstention is not appropriate because there are things that should be heard here, as opposed to things that should be heard in the State court, I submit to you is simply incorrect. Clearly, immunity applies. Buckwalter made that very clear. To the question about the database report. But we only need to be concerned about immunity if we don't younger abstain, don't we? Correct. Because he's not asking for damages. If it were up to me, Your Honor, abstention would come first, because then there's no need for the discussion of immunity. Okay. He's not asking for damages, so then the whole question is one of injunctive relief or declaratory relief, correct? Correct. All right. As to, and my last point, Your Honors, would be, as to the database report, what has occurred is that the Board has voided the report. The report has been void for several months. It was effective, and as far as I know, and this is obviously not in the record because it's post-briefing, but there has been no negative blowback as far as the Board is aware. So as far as, to the extent that the issue of the database report is something that cannot be adjudicated in State court, I submit to you that there is no evidence presented in the record that the Board intends to do anything other than what it has done, which is comply with this Court's order, voiding the report, and then when the decision is finally made in the State court level or on the Nevada Supreme Court level or at this level or, if need be, at the United States Supreme Court, then the Board will take the action it needs to take under the Federal regulations. Mr. Gilmour, this is probably not totally a relevant question, and I preface it so that you know that it won't affect the outcome of this case. But it seemed odd to me that after the hearing officer who saw the witnesses and heard the testimony and ruled in substance in favor of Dr. Tate, the Board came out completely contrary to that. Is something going on there that isn't reflected in the record? I don't have the ability to jump into the heads of the Board members, but ---- What was there before the Board that there wasn't before the hearing officer? As far as I'm concerned, as far as I know, nothing other than the Board has the ability to size up the witnesses, size up the evidence, and has to make the decision. No, no, no. I thought the witnesses all testified before the hearing officer. Did they repeat their testimony before the Board? No, but they have the ability to review the record and to evaluate the testimony. So they saw a cold record? As far as I understand. All right. You can't shed any light for me as to why the Board would vary so diametrically from what the hearing officer did. The only thing I can suggest is that this is only one of several cases that's pending before this Court, and it involves the Board and it involves various doctors and it involves the same lawyers. And I think the conclusions can be drawn that there might be, if this is where you're going, Your Honor, there might be something. Against the lawyer? No. That's not what I'm suggesting. Oh, because if it's against other doctors, I mean, is there sort of a rash of doctor confrontations in Nevada with a family of people? I don't see what other doctors have to do with Dr. Tate. Maybe the best thing to do is to say you don't know. Counsel, you're doing the best I can to answer your question. I appreciate the preface that it perhaps might not be relevant to this, and I don't want to talk myself into a corner here. Wise. With that, if there are no further questions, then I will forfeit the remainder of my time. I have no questions. No questions. Thank you, Your Honor. Mr. Hafner, you have 45 seconds. We'll round that off to a minute. Thank you, Your Honor. Now, you say they saw a cold record. The interesting part was there was no discussion about the record at the adjudication by the board. And this is my concern here, and why Younger is discretionary and why it shouldn't be applied here, is there's some very grave concerns about what the board did in this case. The board found him guilty of a violation related to, quote, quality of care when quality of care was dropped at the hearing level. In fact, the matter is, what happened was it was a standard board meeting and this was just a board meeting. No, I thought that count one, quality of care, was dismissed, and what was sustained was disrepute of the medical profession. Correct, Your Honor. But the motion that was made said that Dr. Tate should be guilty of count two because he had a negative impact on quality of care. Those were the words that was used. And that was our problem. It was such a violation of Dr. Tate's due process rights that why should he have to suffer the data bank, going before all of the other medical boards where he's licensed, going before these other hospitals and the like where he may hold privileges, and explaining what goes on while we wait for the judicial review process to occur. I mean, the whole point of making 1983 was a tort was to give a redress, and we've said that you don't have to exhaust your administrative procedures in order to bring a 1983 claim. And he wasn't looking for damages. We were simply looking for declaratory and injunctive relief. And we believe that this Court has the power and that this Court should have the power to be able to rein in a medical board when, in this case and with other doctors and the like, they are engaging in blatant acts. Mishler was a case-by-case basis, and they said that immunity should only be applied at a case-by-case basis. This was not a judicial function. This here, in this case, was an act where they took an action at a board meeting without having any discussion. It wasn't adversarial. We couldn't even talk to try to stop them from the erroneous motion where it talked about quality of care. They stopped me from pointing that out. There was no – this wasn't a judicially equivalent act when they adjudicated the matter. And so we believe that, you know, immunity shouldn't apply even though it doesn't apply to declaratory and injunctive relief. All right. Thank you very much. Thank you. The matter of Tate v. Nyland will be submitted. And we thank counsel for their illuminating oral argument. And now we'll go to the next Tate case, which is Tate v. University Medical Center of Southern Nevada.
judges: Fernandez, Gould, Bea